**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Titilayo Adetu,<br><br>        Plaintiff,<br><br>v.<br><br>Northern Cochise Community Hospital Incorporated, et al.,<br><br>        Defendants. | No. CV-25-00409-TUC-RM<br><br>**ORDER** |

Plaintiff initiated this action by filing a pro se Complaint on July 21, 2025. (Doc. 1.) Pending before the Court is Defendant Northern Cochise Community Hospital's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 8); Defendants Timothy Cogar and Edith Devrnja's Motion to Dismiss Case or Alternatively to Transfer Venue (Doc. 11); Defendant Troy Kastrup's Motion to Dismiss Counts III-VI for Failure to State a Claim (Doc. 13); Defendant ERx Plus's Motion to Dismiss for Failure to State a Claim, for Improper Venue, and alternatively to Transfer Venue (Doc. 20); and Defendant Burdette's Motion to Dismiss for Failure to State a Claim, for Improper Venue, or alternatively to Transfer Venue (Doc. 30). The Motions are all fully briefed. (Docs. 14, 15, 16, 17, 18, 21, 24, 25, 28, 31, 32.)

For the following reasons, the Court will grant Defendant Northern Cochise Community Hospital's Motion to Dismiss; dismiss the claims asserted against Defendants Kastrup, Cogar, Devrnja, ERx, and Burdette pursuant to the doctrine of forum non conveniens; and deny as moot the remaining Motions to Dismiss.

## I.  Background

Plaintiff is an emergency medicine physician, and his claims arise from an agreement he entered to provide emergency medicine services at Defendant Northern Cochise Community Hospital ("NCCH") in Willcox, Arizona. (Doc. 1 at 4-5.) Defendant ERx Plus ("ERx") is a professional corporation engaged in the business of staffing physicians at rural hospitals. (*Id.* at 3.) After being contacted by an ERx recruiter in October 2023, Plaintiff entered into a written Independent Contractor Agreement and a Placement Agreement with ERx in November 2023. (Doc. 1 at 4; Doc. 1-2.)

The Independent Contractor Agreement dictated the terms under which Plaintiff would provide physician services, and the Placement Agreement dictated that Plaintiff would provide physician services at NCCH in Willcox, Arizona, at a rate of $225 per hour. (Doc. 1-2 at 8.) The Placement Agreement specified that Plaintiff would be "entitled to receive any premium for work performed by Provider during a holiday . . . as determined by ERx in its sole discretion." (*Id.*) Furthermore, the Independent Contractor Agreement stated that "any action brought to enforce any right or obligation under this Agreement shall be subject to the exclusive jurisdiction of the courts of the state of Tennessee." (Doc. 1-2 at 7.)

Plaintiff performed work during January and February 2024, for which he states he was paid in full. (Doc. 1 at 5.) Plaintiff explains that on June 18, 2024, Defendant Melissa Burdette—an ERx physician scheduler—texted Plaintiff to see if he would be available to do two 24-hour shifts on June 20, 2024, and June 21, 2024, at a rate of $400 per hour. (*Id.* at 5.) Plaintiff agreed to those dates, and that pay rate. (*Id.*) Plaintiff alleges that his exchanges with Defendant Burdette constituted an agreement for all remaining shifts to be paid at a rate of $400 per hour, and he attaches screenshots of the relevant text messages. (*Id.* at 6; Doc. 1-2 at 9.) Plaintiff asserts that he worked 228 hours in July 2024, 225.5 hours in August 2024, and 24 hours in September 2024, and that when he was ultimately paid for his services, ERx did not compensate him at the $400 per hour rate that Plaintiff believed had been agreed upon. (*Id.*) Plaintiff states that Defendant Troy Kastrup is the "Chief

Executive Officer of ERx" and that Defendant Edith Devrnja is the "CEO of ERx." (*Id.* at 4.) Defendant Timothy Cogar is the "controller" of ERx, and "handled payments and rate disputes." (*Id.*)

As a result of the foregoing events, Plaintiff brings a breach of contract claim against ERx and NCCH in Count 1; a claim for breach of the implied covenant of good faith and fair dealing against ERx and NCCH in Count 2; a promissory estoppel claim against ERx, Kastrup, Cogar, Burdette, and Devrnja in Count 3; an unjust enrichment claim against all Defendants in Count 4; a fraudulent misrepresentation claim against Kastrup, Cogar, Burdette, ERx, and Devrnja in Count 5; and a negligent misrepresentation claim as an alternative in Count 6, and apparently asserted against the same Defendants. (*Id.* at 7.)

Every Defendant has moved to dismiss the above-captioned matter. (Docs. 8, 11, 13, 20, 30.) Each Defendant asserts that Plaintiff has failed to state a claim upon which relief can be granted. (Docs. 8, 11, 13, 20, 30.) Defendants Cogar, Devrnja, and Burdette further assert that they are not subject to the Court's personal jurisdiction. (Docs. 11, 30.) Finally, Defendants Cogar, Devrnja, Burdette, and ERx argue that transfer of venue is appropriate, or that this action should be dismissed for improper venue. (Docs. 11, 20.) Defendants Cogar, Devrnja, Burdette, and ERx each explain that in their view, this matter is governed by the forum selection clause executed as part of the Independent Contractor Agreement between Plaintiff and ERx. (*See id.*) The Court will first address the venue issues that have been raised and will then address the remaining issues regarding failure to state a claim upon which relief may be granted.

## II.    Discussion

### a.  Venue and Forum Non Conveniens[1]

Even where a civil action has been brought in a proper district, a district court is empowered to transfer "any civil action to any other district or division where the action

---

[1] Since the Court concludes that this is not the appropriate forum for the majority of Plaintiff's claims, the Court need not address Defendants' arguments regarding personal jurisdiction or failure to state a claim, except as set forth below in subsection (b). "It is well established" that a court may dismiss or transfer as a result of venue problems "even where the [c]ourt lacks personal jurisdiction over defendants." *Jasper v. Martinez*, No. 217CV03026GMNVCF, 2018 WL 3997262 at *2 (D. Nev. Aug. 21, 2018).

might have been brought" "[f]or the convenience of the parties and witnesses." 28 U.S.C. § 1404(a). Where a civil action has been brought in the wrong district, a district court is empowered to dismiss the case, or, "if it be in the interests of justice," transfer the case to another district where the case could have been brought. 28 U.S.C. § 1406(a). Section 1404(a) is "merely the codification of the doctrine of forum non conveniens for the subset of cases in which the transferee forum is within the federal court system." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Where, on the other hand, there exists a "forum selection clause pointing to a state or foreign forum[,]" the "appropriate way to enforce [that clause] . . . is through the doctrine of forum non conveniens."[2] *Id.*

A forum selection clause referring to "the courts of" a particular state means the state courts of that state, not the federal courts that are located in the state. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081-82 (9th Cir. 2009). Courts must "evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Atl. Marine Const. Co.*, 571 U.S. at 61. When a valid forum selection clause is implicated, "the plaintiff's choice of forum merits no weight," because the plaintiff is the party "defying the forum-selection clause." *Id.* at 63. Nor should a court "consider arguments about the parties' private interests," because by agreeing to a forum selection clause, the parties have "waive[d] the right to challenge the preselected forum as inconvenient[.]" *Id.* at 64. As such, a court considering transfer or dismissal pursuant to the doctrine of forum non conveniens "may consider arguments about public-interest factors only." *Id.* Since the enforcement of forum selection clauses is in the public interest, it is only in unusual cases that forum selection clauses will not control. *Id.*

A district court may raise the doctrine of forum non conveniens of its own accord even where the parties have wrongly raised Section 1404(a), Section 1406(a), or Rule 12(b)(3) as the mechanism pursuant to which a case should be dismissed. *Glob. Quality*

---

[2] A forum selection clause does not render venue "improper" within the meaning of 28 U.S.C. § 1391. *Atl. Marine Const. Co.*, 571 U.S. at 58. Venue being proper within the meaning of that statute, however, does not abrogate the Court's responsibility to give effect to a valid forum selection clause. *Id.*

*Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*, No. 16-CV-00920-LB, 2016 WL 4259126 at \*4 (N.D. Cal. Aug. 12, 2016) (collecting cases); *see also LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 827 (N.D. Tex. 2013) (applying Fifth Circuit law) ("[T]he moving party's choice of procedural mechanisms—Rule 12(b)(3) or § 1404(a)—does not dictate the court's choice of analytical tools.") (citing 5B Wright & Miller, Federal Practice & Procedure § 1352, p. 131 (3d ed. Supp. 2013)). In *Atlantic Marine Construction Company*, the Court specifically contemplated "a forum non conveniens motion" as the mechanism through which a party seeking to give effect to a forum selection clause pointing to a nonfederal forum would seek dismissal. 571 U.S. at 63.

A nonsignatory to a contract may be bound by a forum selection clause where "the alleged conduct of the non-parties is . . . closely related to the contractual relationship." *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 454 (9th Cir. 2007). This principle is especially pronounced where a nonsignatory defendant seeks to enforce a forum selection clause against a signatory plaintiff, because in those circumstances "it [cannot] be said that the nonsignatory defendant [is] unfairly subject to jurisdiction without 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.'" *Pestmaster Franchise Network, Inc. v. Mata*, No. 16-CV-07268-EMC, 2017 WL 1956927 (N.D. Cal. May 11, 2017) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Here, the Defendants who have moved to dismiss or transfer this action due to issues with venue raise Section 1404(a), Section 1406(a), and Rule 12(b)(3) as the bases upon which the Court should grant their Motions, and state that the U.S. District Court for the Eastern District of Tennessee would be the appropriate forum for a transfer. (*See* Docs. 11, 20, 30.) Defendants point to the forum selection clause in Plaintiff's Independent Contractor Agreement stating that "any action brought to enforce any right or obligation under this Agreement shall be subject to the exclusive jurisdiction of the courts of the state of Tennessee." Since the "courts of a state" mean the state courts of that state and not the

federal courts located within that state, however, the forum selection clause in the Agreement points to a state forum; specifically, it means the Tennessee state courts.

Since the relevant forum selection clause here points to a state rather than a federal forum, Section 1404(a), Section 1406(a), and Rule 12(b)(3) are not the appropriate mechanisms through which this Court may resolve venue issues, and it would be improper to transfer this action to another federal court. The Court must instead apply the doctrine of forum non conveniens. As discussed above—the Court must give effect to the forum selection clause unless unusual public interest factors mandate otherwise. Since no such unusual circumstances exist here, the Court will give effect to the forum selection clause in Plaintiff's Independent Contractor Agreement.

The only remaining question is which Defendants should be bound by the forum selection clause, since only ERx (with signature from Troy Kastrup) and Plaintiff are actually parties to the Independent Contractor Agreement. (Doc. 1-2 at 4-8.) The Court finds that Defendants Troy Kastrup,[3] Melissa Burdette, Timothy Cogar, and Edith Devrnja—as well as ERx and Plaintiff, the actual parties to the agreement—should be bound by the forum selection clause. This is because the conduct of each of the nonsignatory Defendants, and Troy Kastrup, is very closely related to the contractual relationship at issue; each Defendant was intimately involved in the ratification or execution of the relevant contract. Kastrup, as CEO of ERx and signatory on behalf of the company, was essential to the contract's ratification. Burdette helped execute the contract by scheduling Plaintiff for shifts at NCCH, and offered Plaintiff the $400 rate for certain

---

[3] Even though Defendant Kastrup did not address the forum selection clause in his Motion to Dismiss (Doc. 13), the claims against him will nonetheless be dismissed on this basis because the Court is empowered to raise the issue of forum non conveniens sua sponte. *See Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ("[D]ismiss[ing] an action on grounds of forum non conveniens" is one of a federal court's "inherent powers[.]"); *Seagal v. Vorderwuhlbecke*, 162 F. App'x 746 (9th Cir. 2006) (finding that "no legal basis" existed for "objecting to the sua sponte nature of the district court's dismissal on [forum non conveniens grounds.]"). Moreover, Defendant Kastrup had an opportunity to present his views on the forum selection clause; other Defendants—including other nonsignatories— raised the issue in their concurrently briefed Motions to Dismiss. *See Costlow v. Weeks*, 790 F.2d 1486 (9th Cir. 1986) (referring to the "to the long-approved practice of permitting a court to transfer a case sua sponte under the doctrine of forum non conveniens . . . so long as the parties are first given the opportunity to present their views on the issue.").

shifts. Timothy Cogar, as Controller of ERx, acted on behalf of the company to pay Plaintiff and "handled rate disputes." Finally, Plaintiff alleges that Edith Devrnja, also as CEO of ERx, "ratified the decision not to pay Plaintiff in full." (Doc. 1 at 4.) Moreover, Burdette, Cogar, and Devrnja actively seek to have this action litigated in Tennessee; therefore, enforcing the forum selection clause will not subject them unfairly to the jurisdiction of a separate sovereign.

In Plaintiff's responses to Defendants Cogar, Devrnja, ERx, and Burdette's arguments regarding the forum selection clause, Plaintiff asserts that the forum selection clause should not apply because Plaintiff's claims arise not from the Independent Contractor Agreement, but rather from alleged subsequent agreements to pay Plaintiff at a new rate of $400 per hour. (Doc. 15 at 6, Doc. 25 at 2-3, Doc. 31 at 6.) Plaintiff argues that the alleged subsequent agreements constitute new contracts not subject to the forum selection clause. (*Id.*) This argument is unavailing for two reasons. First, the facts that Plaintiff alleges are undoubtedly more consistent with a claim that the original contract was modified, not that an entirely new contract was executed between the parties.[4] Second, the Independent Contractor Agreement itself specifies that its term spans "one (1) year from the date of signature affixed hereto" and that the Agreement will "automatically renew for successive one (1) year terms." (Doc. 1-2 at 6.) The Agreement was signed November 15, 2023, and the conduct Plaintiff complains of occurred "between June and September 2024," well within the one-year time period allotted by the Agreement even without automatic renewal. (*See* Doc. 31 at 6.)

In sum, the only Defendant that should not be bound by the forum selection clause in Plaintiff's Independent Contractor Agreement is NCCH, since NCCH had no intimate involvement with the ratification or execution of the Agreement; NCCH was simply where the parties to the contract agreed that Plaintiff would perform work.[5] The Court will

---

[4] Indeed, Plaintiff appears to recognize this in his Complaint, referring to the Agreement and its "subsequent written and oral *modifications*." (Doc. 1 at 7) (emphasis added).
[5] Additionally, NCCH filed a response to Cogar and Devrnja's Motion to Dismiss in which NCCH requests that the Court retain jurisdiction over Plaintiff's claims against NCCH, due to jurisdictional issues that would arise were the Court to transfer the entirety of this case to a different venue. (Doc. 16.)

therefore dismiss Plaintiff's claims against all Defendants except NCCH without prejudice to refiling in Tennessee state court, and will address in the following section NCCH's Motion to Dismiss for failure to state a claim.

### b. NCCH's Motion to Dismiss

Plaintiff brings three counts against NCCH. (Doc 1.) These include breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (*Id.*) The Court will address each claim in turn.

### i. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint need not include "detailed factual allegations," it must contain more than labels, conclusions, "and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In evaluating a Rule 12(b)(6) motion to dismiss, the court must take as true all well-pleaded factual allegations of the complaint and construe them in the light most favorable to the nonmovant. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, the court need not accept as true legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at 678.

As a general rule, the district court may not consider any material beyond the pleadings when resolving a motion to dismiss for failure to state a claim. *Lee v. City of Los*

*Angeles*, 250 F.3d 668, 688 (9th Cir. 2002), *impliedly overruled on other grounds as discussed in Gallardo v. DiCarlo*, 203 F.Supp.2d 1160, 1162 n.2 (C.D. Cal. 2002). However, the court may consider material submitted as part of the complaint, such as the documents which Plaintiff has attached to his Complaint. *See id.*

### ii.   Count I – Breach of Contract

In Count I, Plaintiff asserts a breach of contract claim against NCCH, arguing that NCCH is liable under the Independent Contractor Agreement, as well as the "subsequent written and oral modifications." (Doc. 1 at 7.) To state such a claim under Arizona law, Plaintiff must demonstrate privity of contract. *Stratton v. Inspiration Consol. Copper Co.*, 683 P.2d 327, 329–30 (Ariz. App. 1984). Here, Plaintiff does not contend that he can show privity of contract between himself and NCCH. (*See* Doc. 14.) Plaintiff instead argues that principles of agency, ratification of contract, and intended beneficiary can support his claim. (*Id.*) None of these principles support Plaintiff's position.

NCCH is correct that rather than describing an agency relationship between NCCH and ERx, Plaintiff's response to NCCH's Motion to Dismiss discusses facts, and caselaw, supporting the existence of an agency relationship between Plaintiff himself and NCCH. Plaintiff discusses the "direct operational control" NCCH exercised over Plaintiff's work, and explains that "Arizona courts have long recognized hospital liability for the acts of physicians under agency and apparent-agency doctrines." (Doc. 14 at 4.) Whether or not Plaintiff acted as an agent of NCCH has no bearing upon whether NCCH acted as an agent for ERx or vice versa.

Plaintiff's arguments that NCCH ratified the contract between himself and ERx, and therefore became liable for breach of contract, are similarly without merit. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Molina v. BMO Harris Bank, N.A.*, No. 2 CA-CV 2022-0106, 2022 WL 16736929 at *3 (Ariz. App. Nov. 7, 2022) (citing Restatement (Third) of Agency § 4.01(1) (2006)). "Ratification requires intent to ratify plus full knowledge of all the material facts." *Leroy v. Seattle Funding Grp. of Arizona, LLC*, No. 1

CA-CV 10-0714, 2012 WL 75644 at *3 (Ariz. App. Jan. 10, 2012). Here, Plaintiff alleges no facts showing that NCCH evinced affirmance of the contract between himself and ERx, much less intent to do so. Plaintiff does not state that anyone from NCCH indicated that NCCH would be responsible for paying Plaintiff, and as NCCH points out, Plaintiff's Complaint is devoid of facts showing that NCCH was even aware of the rate negotiations occurring between Plaintiff and ERx.

Finally, Plaintiff asserts that NCCH was the "intended beneficiary" of the contract between himself and ERx, rendering NCCH liable on that contract. A third-party beneficiary of a contract, however, is not the promisor/promisee to a contract, and therefore cannot be held liable on it. *See Sherman v. First Am. Title Ins. Co.*, 38 P.3d 1229, 1232 (Ariz. App. 2002). Therefore, Plaintiff's "intended beneficiary" theory fails.

Plaintiff has failed to state a claim against NCCH in Count I, and Count I will therefore be dismissed.

### iii.   Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing

In Count II, Plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing against NCCH. (Doc. 1 at 8.) The implied covenant of good faith and fair dealing, however, "exists by virtue of a contractual relationship." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 29 (Ariz. 2002), *as corrected* (Apr. 9, 2002). Plaintiff again argues that agency and ratification principles support finding that a contractual relationship existed between himself and NCCH, but as discussed above, these arguments are without merit. Since no contractual relationship existed between Plaintiff and NCCH, Plaintiff has failed to state a claim against NCCH in Count II, and this claim will be dismissed.

### iv.   Count IV – Unjust Enrichment

In Count IV, Plaintiff brings a claim for unjust enrichment against NCCH. (Doc. 1 at 9.) "An unjust enrichment claim requires proof of five elements: '(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the

absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law.'" *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 50 (Ariz. App. 2012) (internal citations omitted).

As to the fourth element, "[a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person." *Advance Leasing & Crane Co. v. Del E. Webb Corp.*, 573 P.2d 525, 527 (Ariz. App. 1977) (citing Restatement of Restitution § 110)). In addition, instructive here is authority regarding the responsibilities of owners sued by subcontractors for a general contractor's failure to pay. In such cases, where an owner has satisfied their obligations to a general contractor, the owner is not liable to the subcontractor on a theory of unjust enrichment "because the owner is not unjustly enriched if it fully paid its obligation." *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 50 (Ariz. App. 2012).

Here, the facts Plaintiff alleges show that Plaintiff conferred a benefit upon NCCH as part of the performance of a contract with a third party, ERx. This does not mean that ERx's alleged failure to perform renders NCCH liable for restitution, as there exists a justification for the alleged enrichment and impoverishment. Moreover, comparing the facts here to those of contracting disputes, NCCH—the "owner"—appears to have satisfied its obligation to ERx, the "general contractor." Plaintiff, as the "subcontractor" in this situation, cannot recover against NCCH for ERx's alleged failure to pay.

As such, Plaintiff has failed to state a claim against NCCH in Count IV, and this claim will be dismissed.

### III.     Leave to Amend

In the Ninth Circuit, "[a] pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Pursuant to the doctrine of forum non conveniens, it is clear that Plaintiff's claims against Defendants Kastrup, Cogar, Devrnja, ERx, and Burdette could not be cured by

filing an amended complaint in this Court. However, the Court will allow Plaintiff, if he chooses, to file an amended complaint against Defendant NCCH addressing the deficiencies discussed above. Plaintiff is warned that his claims against NCCH will be dismissed if he fails to timely file an amended complaint.

Accordingly,

**IT IS ORDERED** that Defendant Northern Cochise Community Hospital's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 8) is **granted**. Within **thirty (30) days** of the date this Order is filed, Plaintiff may file an amended complaint against Defendant Northern Cochise Community Hospital that cures the deficiencies addressed above. If Plaintiff fails to file an amended complaint within thirty days, the Clerk of Court is directed to enter a judgment of dismissal without prejudice and without further notice to Plaintiff.

**IT IS FURTHER ORDERED** that Defendants Timothy Cogar and Edith Devrnja's Motion to Dismiss Case or Alternatively to Transfer Venue (Doc. 11); Defendant Troy Kastrup's Motion to Dismiss Counts III-VI for Failure to State a Claim (Doc. 13); Defendant ERx Plus's Motion to Dismiss for Failure to State a Claim, for Improper Venue, and alternatively to Transfer Venue (Doc. 20); and Defendant Burdette's Motion to Dismiss for Failure to State a Claim, for Improper Venue, or alternatively to Transfer Venue (Doc. 30) are **denied as moot**.

**IT IS FURTHER ORDERED** that the claims asserted against Defendants Kastrup, Cogar, Devrnja, ERx, and Burdette are **dismissed without prejudice** to **refiling** in the state courts of Tennessee.

Dated this 30th day of March, 2026.

_____
Honorable Rosemary Márquez
United States District Judge